UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Willie Chambers,  Case No. 1:13cv735

    Plaintiff,  Judge Michael R. Barrett

    v.

Total Renal Care, Inc. et al.,

    Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants Total Renal Care, Inc. Norwood Dialysis and Davita-Norwood Dialysis' Motion for Summary Judgment. (Doc. 23). Plaintiff filed a Memorandum in Opposition (Doc. 26) and Defendants filed a Reply (Doc. 29).

### I. BACKGROUND

On September 17, 2011, Plaintiff Willie Chambers went to the dialysis center owned by Defendants for treatment. (Doc. 6, ¶ 5). Plaintiff was 91 years old at the time. (Doc. 27-1, Willie Chambers Dep. at 7). Plaintiff had been to the dialysis center "a lot." (Id. at 52). After finishing her treatment, Plaintiff began to leave through the handicap accessible door. (Doc. 6, ¶¶ 4, 6). Before she opened the door, Plaintiff waved to another patient who was sitting outside in a wheelchair. (Chambers Dep. at 25). Then Plaintiff pushed the button that caused the door to automatically open. (Id. at 22). The door opened and Plaintiff started to walk through the door. (Id.) As Plaintiff was walking out, she said hello to the patient who was waiting outside. (Id. at 23-24). In her deposition, Plaintiff explained:

> Q. Okay. Now, when you were talking with this patient, were you still standing in the door?
>
> A. I was halfway – I was halfway out that door. There's a big tall flower pot sitting out there to put cigarettes in.  And when I looked up the door was coming at me and I couldn't get out of there.
>
> Q. Okay. So let me ask you how long were you standing in the doorway before the door came back and hit you?
>
> A. I wasn't standing there. I was walking through, going out.

(Id. at 24).  Plaintiff explained further:

> And I started – I went on out.  I don't know if the wind was blowing hard or what, but I seen that door – I pushed that door and – and I was speaking to them sitting out there, so I don't know – I don't know who pushed that door or the wind pushed it or what.

(Id. at 22).  Plaintiff also testified that this is not the first time she had seen the automatic door close too quickly on someone trying to exit the facility.  Plaintiff testified:

> Q. Okay. So just to clarify, you have seen before people push the button to open the door and then have to push it again to open it again?
>
> A. Yes, I have seen that.

(Id. at 28).  However, Plaintiff stated that she had never had a problem with the door because someone had always been there to hold it for her.  (Id. at 27).

Plaintiff alleges that Defendants breached their duty of care to Plaintiff by negligently failing to maintain the automatic door in a reasonably safe condition and/or negligently failing to warn her of the hidden/latent danger of the door closing so quickly. (Doc. 6, ¶ 10).

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if

2

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**B. Negligence**

The parties agree that Ohio law applies to Plaintiff's negligence claim. Under Ohio law, to establish negligence, "a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122 (Ohio 2009). "When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff." *Id.* (citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 662 N.E.2d 287 (Ohio 1996)). The parties agree that Plaintiff was a business invitee. "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1089-90 (Ohio 2003) (citing *Paschal v. Rite Aid Pharmacy*, 480 N.E.2d 474 (Ohio 1985)).

Defendants argue that under the "open and obvious" doctrine, Plaintiff's claim for negligence is barred.

"Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Lang*, 909 N.E.2d at 123 (citation omitted). Under the doctrine, "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* (quoting *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504 (Ohio 1992)). Thus, when a plaintiff is injured by an open and obvious danger, summary judgment is generally appropriate because the duty of care necessary to establish negligence does not exist as a matter of law. *Id.* See, e.g , *Armstrong v. Best Buy Co.*, 788 N.E.2d at 1092 (finding as a matter of law that the rail in question was visible to all persons entering and exiting the store and therefore presented an open-and-obvious danger).

Defendants argue that the door closing was an open and obvious hazard. However, one court in Ohio has found that an automatic sliding door does not present an open and obvious danger of closing:

> Although a commercial building with automatic sliding doors is very commonplace in today's society, common experience with these doors does not suggest that they are likely to close on a person. To the contrary, most expect that these doors are equipped with safety mechanisms to prevent the door from closing on a person, to prevent injuries from occurring. For instance, these doors usually begin to close after a certain amount of time, but when someone or something enters the threshold, they cease closing and either remain in their position or reopen. Thus, we do not find that automatic sliding doors pose the open and obvious danger of closing on a person and causing injury so that an owner or occupier may reasonably expect that persons entering the premises will take appropriate measures to protect themselves. Accordingly, the open-and-obvious doctrine does not apply in this case.

*Smith v. Frederick C. Smith Clinic*, 939 N.E.2d 192, 200 (Ohio Ct. App. 2010) (footnote omitted). Defendants argue that this case is distinguishable because there is a distinction between automatic sliding doors and automatic hinged doors. Defendants

4

are correct in that the court itself made that distinction in a footnote:

> The dissent cites a number of cases, many of which are from courts in Michigan, in support of its position that the open-and-obvious doctrine should apply in this case. A review of those cases reveals that those decisions are inapposite to the case *sub judice*. In fact, most of those cases did not involve automatic sliding doors that retract to the sides, as is the case *sub judice*, but were automatic hinged doors. We find a distinct difference as to the open and obvious danger presented by automatic hinged doors, which need space to open and can actually open and hit a person who is in the path of the doors, and the type of doors at issue in this case, which do not present such dangers in their normal operation.

*Id.* at n.2. However, as this Court has found, if an automatic hinged door does not operate normally, the open-and-obvious doctrine does not apply:

> Plaintiff in this case testified that the automatic door closed on him unexpectedly and faster than usual. This testimony gives rise to an inference that the door did not operated as it was supposed to do. Because the risk that it would abruptly shut on him was not an observable risk, Plaintiff could not be expected to protect himself from it. As one court has noted, "[c]learly, if the door was defective and the defect or breakdown in normal operation caused plaintiff's injuries, the open and obvious doctrine is not an available defense." *Hoganson v. Menard, Inc.*, No. 2:04–cv–299, 2007 WL 4395534, at *3 (W.D.Mich. Dec. 12, 2007). *See also Horvath v. Fisher Foods, Inc.*, 194 N.E.2d 452, 455 (Ohio Ct. App. 1963) (holding that jury question existed where plaintiff claimed that she was injured by abnormal operation of the door).

*Mann v. Tractor Supply Co.*, No. 2:08-CV-569, 2010 WL 1856312, at *4 (S.D. Ohio May 10, 2010).

Because Plaintiff has testified that the automatic door closed more quickly than usual, the Court finds that the open-and-obvious doctrine does not apply. Therefore, the question becomes whether Defendants breached their duty to keep the premises in a reasonably safe condition or warn invitees of a concealed defect in the automatic doors.

"To establish that a premises owner failed to exercise ordinary care, the plaintiff must demonstrate one of the following three conditions: (1) the premises owner created

5

the hazard; (2) the premises owner possessed actual knowledge of the hazard and failed to give adequate notice of its existence or to remove it promptly; or (3) the hazard existed for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care." *Ray v. Wal-Mart Stores, Inc.*, 998 N.E.2d 511 (Ohio Ct. App. 2013).

Defendants argue that there is no evidence that they had actual knowledge of the door closing quicker than normal. Defendants rely upon the testimony of their facility administrator, Nicole McClusky, who stated that before the incident involving Plaintiff, there had never been any complaints or problems with the door. (Doc. 24, Nicole McClusky Dep. at 48). McClusky also testified that after the incident involving Plaintiff, Stanley Automatic Door Systems, the company who installed the door, inspected the door and found that it was functioning properly. (Id. at 38).

Nevertheless, the Court finds that there are genuine issues of material fact as to Defendants' knowledge. In *Smith v. Frederick C. Smith Clinic*, 939 N.E.2d 192 (Ohio Ct. App. 2010), a patient brought a negligence action against a medical clinic for injuries she sustained when she was knocked down by the clinic's automatic sliding doors. The court explained that under Ohio law:

> [O]nce the evidence establishes that a dangerous condition existed, and that it is a condition about which the owner should have known, evidence of actual knowledge on his part is unnecessary. . . The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. The obligation extends to the original construction of the premises, where it results in a dangerous condition.

*Id.* (citation omitted). The court concluded that fact issues precluded summary

6

judgment:

> . . . the record is devoid of any evidence that steps were taken by the clinic to ensure that disabled persons entering the clinic, who require more time to walk through a doorway than the average nondisabled person, could safely traverse through the doors. Notably, this is a medical clinic, catering to the needs of those who may be ill, injured, and/or disabled. Although the doors may be operating properly and the time-out setting is satisfactory for the average person using those doors, the clinic was aware that a previous invitee who had to use assistance in order to walk was struck and injured by these doors. At that point, reasonable minds could conclude that the clinic should have pursued one of two options: (1) remedy this problem by installing better sensors that could detect whether an object was in the threshold, even if that object was immobile, so that the doors would either not begin to close or not continue to close while someone/something was in the path of these doors, or (2) place some sort of notice in a location easily observed by those entering and exiting these doors, warning people to use caution and notifying them that the doors automatically close in "x" amount of time. Given this evidence, we find that a genuine issue of material fact existed as to whether the clinic had actual knowledge of the hazard and neglected to give adequate notice of its presence or to remove it promptly.

939 N.E.2d at 482. The court noted: "even if this prior incident had not occurred, the clinic should have taken reasonable precautions to protect its invitees, who undoubtedly included disabled and ill persons who oftentimes require more time to walk through a doorway than the average nondisabled person, by equipping its doors with protection devices to prevent closure in the event that someone is in the threshold of the door." *Id.* at 483.

Similarly, Defendants were operating a dialysis clinic whose patients were ill and/or disabled. Defendants were responsible for adjusting the amount of time the door would remain open before closing. Construing the evidence in a light most favorable to Plaintiff, there are genuine issues of material fact as to whether Defendants breached their duty of care to Plaintiff. Therefore, the Court concludes that Defendants are not entitled to summary judgment.

7

### III.  **CONCLUSION**

Based on the foregoing, Defendants Total Renal Care, Inc. Norwood Dialysis and Davita-Norwood Dialysis' Motion for Summary Judgment (Doc. 23) is **DENIED**.

**IT IS SO ORDERED.**

                                                  */s/ Michael R. Barrett*
                                                  Michael R. Barrett
                                                  United States District Judge